UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GLADYS PABON PACHECO,

    Plaintiff,

        v.                                          Civ. No. 3:19-cv-00987 (WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

     Defendant.

**RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Gladys Pabon Pacheco's, application for Title II disability insurance benefits ("DIB") . It is brought pursuant to 42 U.S.C. §405(g).[2] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order

---

[1] The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

remanding this case for a rehearing. [Doc. #14]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. # 15]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court grants Plaintiff's motion to reverse/remand and denies the Commissioner's motion to affirm.

**LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe

impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920.[3] The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the

---

[3] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

I. **BACKGROUND**

    A. **Facts**

Plaintiff filed her DIB application on August 5, 2016, alleging an onset of disability as of December 23, 2015. Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On March 15, 2018, a hearing was held before Administrative Law Judge Louis Bonsangue ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE"), testified at the hearing. On May 22, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On May 1, 2019, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff was fifty-two years old on the alleged onset date. (R. 82). She completed high school, attended college for one year, is unable to communicate in English, and has past relevant work a candy packer. (R. 25, 41). Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##14-1; 15]. The Court adopts these statements and incorporates them by reference herein.

    B. **The ALJ's Decision**

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 23, 2015. (R. 18). At Step Two, the ALJ found Plaintiff

4

had the following severe impairments: depression, bipolar, panic and anxiety disorders. (R. 19-20). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 20-22). Next, the ALJ determined Plaintiff retains the following residual functional capacity[4]:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform simple, routine, repetitive tasks, consisting of 1-2 steps for 2 hour increments in a normal workday; no strict adherence to time or production quotas; no work with public; no collaborative efforts required; and after learning new tasks, the claimant is able to have occasional interaction with coworkers and supervisors.

(R. 22).

At Step Four, the ALJ found that, through the date last insured, Plaintiff was able to perform her past relevant work. (R. 25). The ALJ also made an alternative Step Five finding. (R. 26). The ALJ relied on the testimony of a vocational expert to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 26). Accordingly, the ALJ determined that Plaintiff was not disabled from December 23, 2015, the alleged onset date, through May 22, 2018, the date of the ALJ's decision. (R. 27).

## II. DISCUSSION

Plaintiff raises several arguments in support of her Motion to Reverse, which the Court will address in turn.

### a. Opinion Evidence

Plaintiff argues that the ALJ erred in assigning greater weight to the non-examining State Agency doctors than to Ms. Pacheco's treating psychiatrist Dr. Alessandra Buonopane. [Doc.

---

[4] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§404.1545(a)(1); 416.945(a)(1).

#14-1 at 10-12]. Plaintiff points out that in August 2016, State Agency Dr. Robert Decarli concluded that,

> PSYCH-THIS CLMNT NOTES PHYSICAL PROBLEMS, BIPOLAR D/O [DISORDER] AN[D] ANXIETY. THE ALLEGATIONS ARE CONSISTENT WITH MER AND TP PSYCHIATRIST IS GIVEN SIGNIFICANT WT. THE CLMNT BEGAN TX IN 01/2016 AND HER AOD IS 12/23/15. TP NOTES THAT WHILE SHE CONTINUES TO HAVE SIGNIFICANT SX SHE HAS SHOWN IMPROVEMENT IN MOOD AND PARANOID FEELINGS AND SHE HAS GOOD JUDGMENT. ADLS ARE INDEPENDENT. RATINGS ARE GVEN REDUCED WT AS NOT CONSISTENT WITH MSE OR WITH TP NOTES. SHE IS [SEEN] MONTHLY AND DX IS BIPOLAR D/O, PANIC D/O. **BY 12/23/16 THE CLMNT WILL IMPROVE AND WILL BE CAPABLE TO MRFC LIMITS**.

[R. 73, 74-75 (Robert Decarli, Psy. D. 08/29/2016) (emphasis added)]. Plaintiff correctly states that because Plaintiff had not met the 12-month durational requirement when filing for benefits, Dr. Decarli's mental RFC was based on a future date, which included a projected improvement of mental health symptoms, which she contends never occurred. [Doc. #14-1 at 10].

On reconsideration on January 4, 2017, State Agency Dr. JoAnne Coyle Ph.D. requested a psych consultative evaluation with interview and MSE, stating,

> We didn't get any updated psych treatment records for the recon file, only updated adls…. The t/s responses on the initial file t/s MSQ suggest a number of significant deficits. The initial file psych reviewer did not give full weight to the t/s impressions, **but I'm not sure I agree with this**. **Given clt's allegations of worsening on recon and the initial file t/s ratings, it would be helpful to have more current and comprehensive MSE data to assist in determining the overall level of cult's functional impairment**.

(R. 87 (emphasis added)). By February 23, 2017, the file on reconsideration contains a note stating "We received updated mental health notes & submitted case for review. We are hoping to avoid CE reschedule but if one is needed we will let them know." (R. 87; see R. 83-84 (listing records from Psychiatry & Addiction was received on February 2, 2017)]. On March 1, 2017, State agency Dr. Adrian Brown, Ph.D. assessed Plaintiff's Mental RFC and found that her

mental health limitations were moderate or not significantly limited and did not preclude work related activities. (R. 92-94).

For the reasons that follow, the Court finds that the ALJ did not fulfill his duty to develop the record and that remand is warranted to obtain complete medical source statements and treatment records from Plaintiff's treating psychiatrist Dr. Buonopane and therapist Vivian Mercado, MFT.

"It is the rule in our circuit that the ALJ, unlike the judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1997) (internal quotation marks omitted); *see Moreau v. Berryhill*, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately." (internal quotation marks omitted) ). "Whether the ALJ has satisfied this obligation or not must be addressed as a threshold issue." *Moreau*, 2018 WL 1316197, at *4. "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)).

"The expert opinions of a treating physician are of particular importance to a disability determination." *Id.* at *5. "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is [the treating physician's] opportunity to develop an informed opinion as to the physical status of the patient." *Halle v. Astrue*, No. 3:11-CV-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (citing *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's

7

medical history 'even when the claimant is represented by counsel or ... by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).

This is not a case where plaintiff suffers relatively little mental health impairment such that the ALJ may render a common sense judgment about plaintiff's functional capacity. The ALJ acknowledged as much by designating as "severe" plaintiff's depression, bipolar, panic and anxiety disorders and assessing a RFC with extensive and detailed limitations. (R. 12, 15-20).

In treatment records dated December 23, 2015, her alleged onset date, Plaintiff presented for an evaluation for acute onset anxiety and panic like episodes. (R. 334). "[P]atient feels stressed at work and anxiety, fighting with her supervisor and supervisor advised eval with her doctor worked there for 23 years and never had a problem." (R. 334). Plaintiff was referred to the emergency department for a crisis evaluation on January 8, 2016, and reported auditory hallucinations and episodes of feeling someone looking over her shoulder. (R. 440-446). Dr. Eileen O'Regan, Plaintiff's PCP, noted in a treatment record dated February 7, 2016, that Plaintiff had entered treatment with psychiatrist Dr. Alessandra Buonopane and had seen her on five occasions. (R. 542). On April 18, 2016, Plaintiff presented again to the emergency department reporting that she was hearing voices commanding her to jump out of a window. (R. 452-53).

Plaintiff received monthly medication management from her treating psychiatrist Dr. Buonopane beginning on January 8, 2016 through at least April 3, 2018. (R. 646, 850). Dr. Buonopane completed a Medical Source Statement on August 22, 2016, (R. 434-37). Diagnosis: Bipolar disorder I note psychosis and panic disorder. (R. 434). "Psychiatric History: h/o mood d/o unclear when started with depressed mood on 1/8/16 [illegible] depressed, then manic, and SI, paranoid, hospitalized midstate x 1." "VH: seeing

8

someone in the house, unable to function, medical leave with Aetna. Pt. had to stop working [illegible]. Unable to drive her car. 'People bother me." (R. 434). "Currently mood improved but her level of functioning is still low. Still [illegible] memory problems and until last month getting lost driving." (R. 434). Cognitive status: decreased concentration, attention and short term memory. (R. 435). Thought content: "paranoid thoughts (until recently consistently) now off and on, at times feels 'watched' in the house and feels 'scared.'" (R. 435). Her performance on cognitive tests, such as serial threes, is poor. The doctor also noted that plaintiff complained of increased weight, paranoia and feeling scared. (R. 435). Mood: "better at times still expansive, irritability, and sad thoughts." (R. 435). In assessing Plaintiff's ADLs, the doctor found that Plaintiff would always have a problem or no ability to use appropriate coping skills or handle frustration appropriately; she would sometimes have a problem or reduced ability to take care of her personal hygiene/care for personal needs; and she would have an average ability/functioning using good judgment regarding safety and dangerous circumstances. (R. 436). In assessing Plaintiff's social interaction, the doctor found that Plaintiff would always have a problem or no ability to interact appropriately with others and ask questions or request assistance; and she would frequently have a problem or limited ability to respect/respond appropriately to others in authority and get along with others without distracting them or exhibiting behavioral extremes. (R. 437). In assessing task performance, the doctor found that Plaintiff would always have a problem or no ability persisting in simple activities without interruption from psychological symptoms; she would frequently have a problem or limited ability to focus long enough finishing simple activities or tasks, changing from one simple task to another and perform basic activities

9

at a reasonable pace; she would sometimes have a problem, or reduced ability carrying out multi-step instructions; and she would have a better than average or infrequent problem carrying out single-step instructions. (R. 437). This opinion, if credited, would indicate that Plaintiff had severe mental impairments significantly restricting Ms. Pacheco's ability to work.

Dr. Buonopane completed a second Medical Source Statement on February 1, 2017, however, only three pages of the six page form is part of the administrative record. (R. 644 (page 6); R. 645 (page 4); R. 646 (page 2)). Diagnosis: Bipolar type I note psychotic features and panic disorder. "Psychiatric History: h/o depression and manic sxs started Jan 2016, developed SI, paranoia, hospitalized at midstate, +VH." (R. 646). The doctor noted an inconsistent response to treatment. "Pt's mood improved in Dec. 2016 with addition of 5 mg. Lexapro but today, after missing 2 appts, she reported being depressed." (R. 646). The doctor assessed that Plaintiff would "frequently [have] a problem, or limited ability" in four of the five ADLs with one area "sometimes a problem, or reduced ability." (R. 645). The doctor found that Plaintiff would not be capable of handling her own funds. (R. 644).

The sole treatment record from Dr. Buonopane is dated April 3, 2018, and lists Plaintiff's medications consisting of Vistaril 50 mg, once daily; Lithium Carbonate 300 mg tablet extended release, 2 in AM and 3 QHS; and Latuda, 60 mg tablet once daily. (R. 850).

Plaintiff also received mental health treatment with therapist Vivian Mercado, MFT, from April 25, 2016 through April 12, 2018. (R. 835-48). The administrative record contains entries for seventy-nine therapy sessions, but contains no treatment notes or information beyond a record of the date, hour and location for the therapeutic visits. MFT Mercado did not complete a Medical Source Statement addressing Plaintiff's ability to

10

function in a work setting. On April 25, 2016, MFT Mercado completed an Evaluation/Intake form, stating, in part, that Plaintiff was diagnosed with bipolar disorder by Dr. Buonopane and exhibited symptoms of anxiety, was experiencing panic attacks and described symptoms of depressive disorder. (R. 829-34). Other stressors identified included a lack of social supports, marginal financial status and a history of childhood trauma. (R. 831-32). A GAF score of 50 "serious symptoms" was assigned. (R. 834). "Gladys continues to need outpatient treatment. She continues to exhibit symptoms of an emotional disorder that interfere[s] with day to day functioning that adversely affect her relationships and requires continued treatment." (R. 834). On December 27, 2017, MFT. Mercado completed a Treatment Plan stating, in part, that the diagnosis remained generalized anxiety disorder and bipolar disorder, unspecified. (R. 826-27). A GAF score of 50 "serious symptoms" was assigned. (R. 826). With regard to anxiety, MFT Mercado stated that "Gladys's anxiety had been identified as an active problem in need of treatment. It is primarily manifested by Panic Attacks-with no apparent situational trigger." (R. 826). MFT Mercado recommended weekly therapy and training in anxiety control techniques. (R. 827). MFT Mercado also noted that "minimal progress" in reaching therapeutic goals. "Recommend continuing the current interventions and short term goals as they exist, since progress is being made but goals have not yet been met." (R. 827). "Comprehensive Treatment Plan Barriers: Emotional problems interfere with treatment." (R. 827). This opinion, if credited, would indicate that Plaintiff had severe mental impairments significantly restricting Ms. Pacheco's ability to work.

Here, the ALJ assigned "great weight" to the physical and mental RFC assessments of State agency consultants Dr. L. Zuniga, Dr. Robert Decarli, Dr. Adrian Brown, and Dr. Robert

11

Weisberg at the initial and reconsideration levels and assigned "less weight" to Dr. Brown's assessed limitations in adapting or managing oneself. (R. 24, *see* R. 69-80 (initial level); 82-97 (reconsideration level)). None of whom treated or examined Ms. Pacheco. The ALJ's reliance on the assessment by the State Agency consultants is problematic because there is one complete medical opinion from Plaintiff's treating psychiatrist dated August 20, 2016, an incomplete opinion dated February 1, 2017, and a single treatment record dated April 13, 2018, from Plaintiff's treating psychiatrist. Moreover, there are no treatment records or opinion from Plaintiff's treating clinician addressing the functional limitations that flow from Plaintiff's mental impairments to support the ALJ's RFC findings.

Here, the record makes clear that Dr. Buonopane and MFT. Mercado were the sole mental health treatment providers during the disability period under review. These clinicians developed a treating relationship with Plaintiff and had ample opportunity to observe and examine her. Dr Buonopane provided medication management and MFT Mercado provided therapy. Second, the Medical Source Statements completed by Dr. Buonopane provided an opinion on Ms. Pacheco's ability to function in a work setting. If the ALJ found the Medical Source Statements inadequate or incomplete and/or unsupported by treatment records he should have requested further information. Despite the central role that MFT Mercado provided and despite Dr. Buonopane's Medical Source Statements, and despite the lack of treatment records from both mental health providers, there is no evidence that the ALJ asked either Dr. Buonopane or MFT Mercado to provide an explanation or support for their findings. The ALJ's disbelief was based in part on treatment notes from other medical providers indicating that Ms. Pacheco "reported she walked in the park and at malls, and meets her transportation needs by walking" and her "mood, affect and behavior were all normal with no signs of depression or mood elevation, affect was

12

appropriate, and behavior was cooperative and attentive with no gross abnormalities." (R. 25). Indeed, a review of the treatment records cited to in the Commissioner's brief reveals that these other medical providers were not providing mental health treatment when observing Plaintiff's psychological status. See R 543 (2/17/19 -Dr. O'Regan, PCP, noting at R. 540 "Had advised no work due to severe anxiety reaction, unable to concentrate, poor decision making, high safety risk."); R. 559 (5/18/16-follow-up appointment with Dr. O'Regan for hypertension and depression); R. 603 (10/25/16-follow-up with Dr. O'Regan for hypertension, prediabetes, obesity and ureteral stone); R. 620 (11/21/16-seen by APRN Shirley Samy complaining of a cough); R. 754 (11/17/16-seen at the emergency department by PA Christina Plantier complaining of congestion and ear pain); R. 761 (5/1/17-seen by PA Stephanie Veillette complaining of left lower quadrant abdominal pain.); R. 780 (12/18/17-seen at the emergency department by PA Shahin Shaikh with a headache and neck pain); R.795 (4/17/17-seen by Dr. O'Regan complaining of a sore throat with pain swallowing); R. 803 (6/27/17-annual exam with Dr. O'Regan). A clinician's observation, however, that a claimant's mental condition is stable on medication and/or that thought processes are not impaired in a non-working setting does not support a medical conclusion that a claimant is capable of employment. *See Hall v. Astrue*, 882 F. Supp. 2d 732, 740 (D. Del. 2012).

Similarly, despite the lengthy and intensive nature of the treatment, the Administrative Record before this Court does not contain *any* medical source statement or treatment records from MFT Mercado and there are *no* treatment records from Dr. Buonopane, save one from April 2018. The Court also notes that during the disability period under consideration, Plaintiff was hospitalized twice for psychiatric issues. (R. 440-51, R. 452-62). Dr. Buonopane's opinion that Ms. Pacheco's "ability to function in the work environment is seriously limited should not

13

be discounted because of an inference gleaned from treatment records reporting on the claimant in other environments." *Hall,* 882 F. Supp. 2d at 740. For a person, such as Ms. Pacheco, who suffers from depression, bipolar, panic and anxiety disorders, "the work environment is completely different from home or a mental health clinic." *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000). Dr. Buonopane opined that Ms. Pacheco's mental impairments rendered her "seriously limited" in a number of relevant work-related activities. Other information in the initial evaluation/intake and treatment plan from MFT Mercado support this opinion.

> Non-medical or other sources including nurse practitioners, therapists, and public or private social agency personnel, may be considered in evaluating "the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006); 20 C.F.R. §§ 404. 1513(d) and 416.913(d).
>
> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as <u>nurse practitioners</u>, physician assistants, and <u>licensed clinical social workers</u>, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. SSR 06–03p, 2006 WL 2329939 at *3 (emphasis added).

*Shand v. Colvin*, No. 3:15 CV 761 (JGM), 2018 WL 389179, at *20 (D. Conn. Jan. 12, 2018) (quoting SSR 06-03p, 2006 WL 2329939, at *3) (emphasis in original)); *see Crowder v. Colvin,* 561 F. App'x 740, 744 (10th Cir. 2014) ("A licensed clinical social worker is not an 'acceptable medical source,' but instead is an 'other source.' 20 C.F.R. § 416.913(a), (d). But that does not mean an ALJ can ignore a licensed clinical social worker's opinion entirely. '[W]e may use evidence from 'other sources,' ... to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.' SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see also* 20 C.F.R. § 416.913(d)").

The principle that an ALJ should not substitute his lay opinion for the medical opinion of treating providers is especially profound in a case involving a mental disability where the *only* therapy was provided by a MFT.

> In the absence of a medical opinion to support the ALJ's finding as to Balsamo's ability to perform sedentary work, it is well-settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *McBrayer v. Secretary of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and citations omitted); *see also Filocomo v. Chater,* 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

*Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). This case warrants a remand for further development of the record. " The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000); *Petruck v. Berryhill*, No. 3:18CV715 (AWT), 2019 WL 2171265, at *2 (D. Conn. May 20, 2019) (citations omitted) ("This duty to develop the record "is heightened in cases where the claimant is mentally impaired", as is the case here.").

Accordingly, the Court finds that this case should be remanded for further development of the record from plaintiff's treating psychiatrist and/or clinician to obtain medical source opinions and treatment records.

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by

15

counsel." (quoting *Echevarria v. Secretary of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982))).

*Richardson v. Barnhart*, 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

> [A]lthough the RFC determination is an issue reserved for the commissioner, see 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c), "'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue,* No. 09–CV–0099, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting *Deskin v. Comm'r of Soc. Sec.,* 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)). Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c); *see also Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand).

*House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013).

Accordingly, the Court finds that additional administrative proceedings are required. On remand, the ALJ should develop the record as necessary to obtain opinions as to Plaintiff's functional limitations from treating and/or examining sources, obtain a consultative psychiatric examination and/or a medical expert review, and/or obtain a functional capacity evaluation and thoroughly explain his findings in accordance with the regulations. *See Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap in the record ....") (citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Pacheco's] RFC." *Id*.

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling.

On remand, the Commissioner will address the other claims of error not discussed herein. *See Moreau v. Berryhill*, Civil Action No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018)("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own."); *Snedeker v. Colvin,* Civil Action No. 3:13-cv-970 (GLS/ESH), 2015 WL 1126598, at *8 (N.D.N.Y. Mar. 12, 2015)(finding it is pointless to address Snedeker's remaining points of error until his low back impairment is factored into a residual functional capacity finding. "The outcome of this case in its present posture will not change whether or not these additional points are meritorious or baseless. Addressing them administratively on remand, however, may avoid a second costly action for judicial review.").

### III. CONCLUSION

For the reasons stated, Plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #14]** is **GRANTED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #15]** is **DENIED**.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.

SO ORDERED, this 10th day of January, 2020, at Bridgeport, Connecticut.

    */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge